# The Calumet and Chicago Canal and Dock Co.

*v.*

## Cornelia Russell.

1. Acknowledgment of deed—*evidence to overcome certificate of.* The official certificate of the acknowledgment of a deed for real estate, must prevail over the unsupported testimony of an interested party, in the absence of proof of fraud or collusion.

2. Where the records showed that a husband, on May 30, 1837, conveyed, by deed of that date, a tract of land, his wife joining in the execution thereof, and the certificate of acknowledgment thereof, made by a justice of the peace of the county where the grantors resided, showed that the grantors, who were personally known to him, appeared and acknowledged the same, and the relinquishment of dower by the wife, which deed was duly recorded in the grantors' county, and on bill by the wife, in December, 1871, for dower in the premises, she testified that she had no recollection of executing and acknowledging the deed, and was very positive she never did, and gave as a reason that, for some time before and after the time the deed purported to be executed and acknowledged, she was absent in the State of Virginia: *Held*, that such testimony, wholly uncorroborated, could not prevail over the evidence afforded by the officer's certificate, and that the testimony, to overcome such certificate, must, after such a lapse of time, be of the clearest and strongest description, and so convincing as to leave no doubt of its truth.

3. Same—*substantial compliance with the statute is sufficient.* The doctrine of this court is, that a certificate of the acknowledgment of a deed need not be in literal compliance with the statute, but that it is sufficient if there be a substantial compliance.

4. Same—*design of statute as to married women.* Prior to the act of 1872, relating to conveyances, it was the design of the law that a married woman should be informed of her true position and the real nature of her interest in the land to be conveyed, and this will be presumed to have been done by the officer, from his certificate that he fully explained to her the contents of the deed. Slight departures from the words of the statute will not prejudice, so long as the substance is preserved.

5. Same—*form held good as to wife.* The certificate of the acknowledgment of a deed by husband and wife was full and formal in every respect, except that it stated that "the contents and meaning of said *husband* were fully explained and made known to her," instead of using the word "*deed*" in place of the word "*husband:*" *Held*, that the certificate was a substantial compliance with the statute of 1833, then in force, and was

sufficient to bar the wife's dower in the lands, it appearing from the whole certificate what was meant, and that the insertion of the word "husband" in the blank was a mere clerical error.

APPEAL from the Circuit Court of Cook county.

This was a petition for dower, filed by Cornelia Russell against the Calumet and Chicago Canal and Dock Company. The facts of the case are fully stated in the opinion.

Mr. MILTON T. PETERS, for the appellant.

Mr. B. S. MORRIS, for the appellee.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

Cornelia Russell, claiming to be the widow of John B. F. Russell, deceased, filed in the circuit court of Cook county her petition for dower in certain lands therein described, of which she alleged her husband was seized in fee during coverture, and who died intestate on the 3d day of January, 1862; that appellants, the Calumet and Chicago Canal and Dock Company, claim title to the premises in fee, and that she had demanded of them her dower in the same, and that they were the only party in interest besides herself. A demurrer to the petition was sustained. The petition was amended at the March term, 1872, to which the defendants filed their answer, denying the seizin of Russell at the time of his death, and denying her right to dower. The answer also sets up the act of 1839 in bar of a recovery of dower. A general replication was put in to the answer, testimony taken, and at the May term, 1873, a decree passed in favor of the petitioner, as prayed. The court also decreed petitioner the sum of three hundred and seventy-six dollars as damages for the delay and refusal of defendants to assign the dower. To reverse this decree the defendants appeal.

It appears the land in which dower is claimed was granted by patent from the United States to H. O. Stone, and to H.

O. Stone and A. McGregor, who, by deeds duly acknowledged and recorded, one dated May 30, 1836, and the other dated June 2, 1836, conveyed the same to John B. F. Russell.

On the 30th May, 1837, these lands were conveyed by deed of that date purporting to have been executed by John B. F. Russell and the petitioner, his wife, to Josiah S. Breese, for the consideration of fourteen hundred dollars, which deed was duly recorded June 3, 1837.

The deposition of the petitioner was taken in the cause on the 1st of May, 1873, in which she testifies that her husband died on the 3d day of January, 1861. She was married to Russell in 1832, and lived with him to the time of his death, in Chicago the most of the time. Since his death she has lived part of the time in New York and part of the time in Chicago, being at Chicago every year or two from a third to half a year. She states she had the two deeds to her husband for these premises, which, in the spring of 1871, she placed in the hands of her attorney, a Mr. Ewing. At the time of the fire in October, 1871, they were in the hands of her attorneys, Smith, Upton & Williams, who state, as she testifies, that they were burned. She further testifies her husband sold this land to J. S. Breese; that she could not have been a party to this deed, as she was not in Chicago at the time; thinks the deed was for all the land previously described; thinks it was in the spring of 1837, as well as she can recollect; thinks she never joined her husband in executing a deed for these lands. On her cross-examination, she says she thinks she has seen the deed from her husband to J. S. Breese; thinks she had it with the papers in the hands of Smith, Upton & Williams, and she had seen a memorandum of it among old papers as having been sold to J. S. Breese. Her recollection is, that she did not join with her husband in the execution of that deed to Breese; she has no recollection of it; was not in Chicago in the spring of 1837, at the time of its execution; she was with her parents in Alexandria, Va., who lived there, and her husband was in Chicago.

It appears appellee's deposition was retaken on the 8th of May, 1873, in which she testified that, in the spring, or early in the summer, of 1871, she examined the record of the acknowledgment of the deed from her husband to J. S. Breese, and the deed—it was written in a pale and an old looking writing, as though it had been written a long time; the certificate to that deed showed at the first glance an alteration, an attempt to alter it; the certificate read, the contents and meaning of said "husband" were fully explained and made known to her; over the word "husband" was written "deed," with bluish-black ink, and in an entirely different handwriting from that of the deed; the last letter of the word "deed" written above the word "husband" was scratched, as though the ink from the pen was nearly if not quite exhausted; it appeared to have been done recently, certainly within a year; it was in one of the books of record in the recorder's office of Cook county. She then reiterates the statement that, in the months of March, April, May and June, she was in Virginia with her parents, and her husband in Chicago.

Her solicitor then propounded this interrogatory, without objection from the other side: "State whether you were or not positive that you never signed or acknowledged the original deed of John B. F. Russell to Josiah S. Breese, referred to in your direct examination or cross-examination?" "I am very positive that I never signed it. I believe that I have never seen it." She further testified she did not know William V. Smith, the justice of the peace before whom the acknowledgment purports to have been made.

The son of petitioner, Cornelian P. Russell, deposed, that the deed from Russell to Breese was not among the deeds his mother had deposited with Ewing, and which he received from Ewing and delivered to his mother.

The certificate of the justice of the peace states that "John B. F. Russell and Cornelia, his wife, personally known, etc., appeared and acknowledged execution, etc.; the said Cornelia was examined separate and apart from her said husband, and

the contents and meaning of said 'husband' were fully explained and made known to her by me, and she acknowledged that she executed the same and relinquished her dower to the premises therein described, freely and voluntarily, without fear or compulsion of her said husband." This, it appears, was taken from letter press copies of abstract of Shortall & Hoard by Handy, Simmons & Co., successors to Chase Bros., Shortall & Hoard and Jones & Sellars, on the 9th of May, 1873.

These are all the facts of any importance in the cause, in the view we are disposed to take of it. The testimony of Mrs. Campbell, going to show only that she saw the petitioner in Philadelphia in April, 1837, and Mrs. Brown, does not show the petitioner was not in Chicago on the 30th day of May, 1837, the date of the deed to J. S. Breese, and which it is claimed she duly acknowledged.

The case stands alone upon the unsupported testimony of appellee of physical inability, by reason of her absence on the 30th day of May, 1837, in which absence she is not corroborated by any witness, to execute and acknowledge the deed in question. The question is thus again presented to this court, shall the uncorroborated testimony of a grantor be allowed to prevail over the solemn act of an officer appointed by law to take the acknowledgment of deeds, and who has certified, under the solemn sanctions of his oath, that he did take the acknowledgment?

This question was before this court at the September term, 1872, and received our most serious consideration, and we then said we had no hesitation in answering the question; that the certificate must prevail over the unsupported testimony of an interested party, otherwise there would be but slight security in land titles; that public policy demanded such a rule, when no fraud or combination is alleged or proved. The magistrate, in taking the acknowledgment, acts judicially. A duty is imposed upon him by the law of ascertaining the truth of the matter about which he is to certify. Parties act

on the faith of his certificate, and in the absence of fraud and collusion, his certificate must be entitled to the fullest credit, only to be overcome by the strongest and most unequivocal testimony. *Lickmon, Exr.* v. *Harding*, 65 Ill. 505.

A reference is made in the opinion to *Graham* v. *Anderson et al.* 42 Ill. 514, where it was held, in an action of ejectment, that parol evidence was not admissible to impeach a certificate of acknowledgment to a deed. The certificate of the officer as to the acknowledgment must be judged solely by what appears on the face of the certificate, and if that is in substantial compliance with the statute, it ought not to be impeached except for fraud or imposition.

Deplorable indeed would be the condition of land titles in this State, and especially in the city of Chicago, where land records have been destroyed by fire, and original deeds also, if a party to one of such deeds could be permitted to allege its non-execution by him, against the certificate of the judge taking it, who may be dead, and his testimony unsupported by any other evidence.

Much stress was placed by appellee's counsel, in his oral argument, on the asserted fact Mrs. Russell was not in Chicago at the date of the deed and of its acknowledgment, but there is only her own unsupported testimony of this fact of absence, and shall that prevail over the solemn official act of a judicial officer that she was personally present before him? The petitioner was then sailing upon a summer's sea, enjoying the present, taking no thought of the future, and accommodating herself, as she should do, to the business and wishes of her husband. Doubtless she does not remember one-half the deeds she thus executed and acknowledged, and now that all original evidence has been destroyed, shall she be permitted to claim an interest in land to which she once solemnly surrendered all claim? Shall her statement, that she was absent, prevail over the more solemn statement of a judicial officer, and disinterested, that she was present before him; that he examined her separate and apart from her husband,

and the contents and meaning of something were fully explained and made known to her by him; that she acknowledged she executed the same, and relinquished her dower to the premises therein described, freely and voluntarily, and without fear or compulsion of her said husband?

But appellee says it was not the contents and meaning of this deed which was explained to her by the magistrate, but "the contents and meaning of my husband." She insists that the contents and meaning of the *deed* were not explained to her.

This certificate must be regarded in a common sense view; all its parts must be taken together, and a meaning given to it which it is qualified to bear. The only question is, taken as a whole, is it in substantial compliance with the statute? It is not denied the certificate is completely formal in every respect, save and except that, instead of the contents and meaning of the *deed* being explained to her, the meaning and contents of her *husband* were so explained to her. This is arrant nonsense, but it does not necessarily vitiate and render void the acknowledgment. The meaning and contents of something were explained to the wife and made known to her, and what that something was, is apparent from other portions of the certificate, and shows how the blank should have been filled. Filling it with the word "husband" renders the subsequent portion of the acknowledgment senseless and unmeaning. Placing there the proper word, or leaving it a blank, the vacancy is supplied by the subsequent tenor of the certificate. The magistrate certifies she acknowledged that she executed the same—what same? Why the paper or instrument brought to the notice of the magistrate, the execution of which the parties appeared before him to acknowledge. She also relinquished her dower in the premises therein described, "freely and voluntarily, and without the fear or compulsion of her said husband." Described in what? Was this a farce being enacted before this officer? No, the parties were rational beings, of business habits, selling real estate

every day. To what did she allude when she "relinquished her dower to the premises therein described?" Certainly to nothing else but the deed, the execution of which they had come before the officer to acknowledge. Where were the premises described, and what did she mean when she said "therein described?" Could anything else be meant or understood but the deed?

These all make certain what word was intended to be put in the blank, but which, by the carelessness of the officer, was not inserted.

The doctrine of this court is, that a certificate of acknowledgment need not be in literal compliance with the statute, but is sufficient if there be a substantial compliance. It is very apparent from this certificate that the officer performed every act essential to make a valid acknowledgment by the wife. There can be no doubt it was a deed conveying these lands, signed by her, the contents known to her, its execution her free and voluntary act, done without the fear or compulsion of her husband, and to which lands she fully and freely relinquished all right of dower.

But suppose the statement was wholly omitted in the certificate, that the contents and meaning of the deed were fully explained to the wife by the magistrate, whilst her voluntary relinquishment of dower is found in it, should that vitiate the acknowledgment? It is true, the statute then in force required the officer taking the acknowledgment of a married woman to "acquaint such woman with the contents of the deed or conveyance." Rev. 1833, p. 133. If those words be omitted, would it not be the duty of a court to presume the magistrate did his duty? In so doing, would any rule of law be violated?

In the State of Ohio, the act of 1818 provided that, where a husband and wife, she being eighteen years of age or upwards, shall, within the State, execute any deed, etc., for the conveyance of her right of dower to any lands, tenements, etc., such deed, etc., shall be signed and sealed by the husband and

28—68TH ILL.

wife, and the signing and sealing thereof be acknowledged by them in the presence of two subscribing witnesses, who shall attest the acknowledgment of such signing and sealing. and also be acknowledged before a judge of the Court of Common Pleas, or a justice of the peace; and the judge or justice taking such acknowledgment shall examine the wife separate and apart from her said husband, and shall read or otherwise make known to her the contents of such deed, etc., and if, upon such examination, she shall declare that she voluntarily and of her own free will and accord, without any fear or coercion of her husband, did, and now doth acknowledge the signing and sealing thereof, the said judge or justice shall certify the same, together with the acknowledgment of the husband, on the same sheet on which such deed, etc., shall be printed or written, subscribing his name and affixing his seal to said certificate.

A deed executed after the passage of that act was acknowledged in this form: "State of Ohio, Hamilton county. *ss.*: Before me, the undersigned, a justice of the peace within and for said county, personally appeared David Brown and Catharine Brown, his wife, who, having been made acquainted with the contents, and being examined separate and apart, the wife from the husband, acknowledged the above indenture to be their voluntary act and deed for the uses and purposes therein mentioned. In witness," etc.

The court held, the acknowledgment, though not in the terms of the statute, was in substantial conformity therewith; that the magistrate was not bound to use the same language he finds in the statute. His certificate must contain the substance of everything required by the law. No substantial part of the provision can be dispensed with. It must appear expressly, or by irresistible inference, from the language of the certificate, that the wife was acquainted with the nature of the deed; that she was examined apart from her husband; that she acknowledged the deed, and admitted it was her

voluntary act, in such terms as necessarily excluded the infer-ence of fear or coercion.

To quiet titles, especially those of long standing, and for the protection of honest proprietors who have fairly acquired title, courts will presume many things in favor of a defective acknowledgment. As instances of the extent to which courts have gone for such purpose, some cases will be cited.

In the State of Maryland, the act of assembly declared that "the persons taking the acknowledgment of the *feme covert* shall examine her privately, out of the hearing of her husband, whether she do make her acknowledgment of the same willingly and freely, and without being induced thereto by fear or threats of ill usage by her husband or fear of his displeasure ; and the person or persons so examining her shall, in a note or certificate of the said caption of the said acknowledgment, certify her examination and acknowledg-ment."

In *Robins' lessee* v. *Bush*, 1 Har. & McH. 50, the lessor of the plaintiff claimed title through the heirs of Judith Stanley, who had intermarried with Robert Grundy, and who had conveyed by deed to Megle, the acknowledgment of which was in this form :

*Memorandum.*—That upon the 23d day of February, A. D. 1702, before us, the subscribers, two of Her Majesty's jus-tices of the peace for Talbot county, came the within written Robert Grundy and Judith, his wife, which said Judith, being by us first examined as the law requires, they both acknow-ledged the within written deed and the premises therein contained, unto the within written Robert Megle, his heirs and assigns forever, as that which he hath of the gift of the said Robert and Judith, his wife, etc.

R. GOLDSBOROUGH,
M. T. WARD.

R. Megle and wife conveyed the land by deed, acknowl-edged in the same way, to Robert Grundy, and he devised the

436     CANAL AND DOCK CO. *v*. RUSSELL.     [Sept. T.

Opinion of the Court.

same to James Lloyd and wife, under whom the defendant claimed. The premises were the estate of Judith, wife of Grundy, and to get the estate in him the conveyance was made to Megle and from Megle to Grundy, the plaintiffs claiming in right of Judith.

The provincial court held the acknowledgment was not according to law, but the court of appeals reversed the judgment.

The case of *Webster's lessee* v. *Hall*, 2 ib. 19, is to the same effect. The statute then in force required that the person taking the acknowledgment should examine the wife privately, out of the hearing of her husband. The statute also required that the person or persons so examining her shall, in a note or certificate of the taking of the said acknowlment, certify her examination and acknowledgment thereupon. All these were omitted from the acknowledgment, yet the same was held valid.

In Pennsylvania, the court, in passing upon the validity of an acknowledgment of a deed executed in Maryland, whose statute directed that the person taking the acknowledgment "shall read to the wife or otherwise make known to her the full contents of the deed," held an acknowledgment good in which these words were omitted. The court say no particular form is necessary. The words of the act need not be used, if its directions are substantially complied with. The court would be departing from the line of its duty, if it were studious to avoid conveyances by objections founded merely upon form. *Lessee of McIntyre* v. *Ward*, 5 Binney, 296. To the same effect is *Shaller* v. *Brand*, 6 ib. 435, where the court said a substantial compliance was sufficient ; otherwise the peace of the country would be seriously affected, as certificates of acknowledgments of deeds have generally been by persons who were either ignorant of or disregarded the words of the act of assembly.

In New Jersey, whose statute is substantially the same as ours, in *Dean* v. *Gieger*, 4 Halstead, 225, the same ruling

was had. · So in Rhode Island, *Churchill* v. *Monroe,* 1 Rh. I. 209. So in New York, *Dennis* v. *Tarpenny,* 20 Barb. 371, and many other cases. So in Virginia, in *Tod* v. *Baylor,* 4 Leigh, 498, where the certificate stated that the wife made her acknowledgment freely and voluntarily, and that she was willing the conveyance should be recorded, but did not show a declaration by her that she had willingly signed and sealed it, or that it was shown and explained to her by the commissioner, it was held, that if she in fact signed the deed, such certificate was substantially a compliance with the statute, but if she had not signed it, the acknowledgment so certified was invalid. In this case the wife had not signed the deed, nor did it so purport.

So in Kentucky, in *Vantz* v. *Bailey,* 3 Dana, 111, where, upon the conveyance, the clerk certified the acknowledgment of both husband and wife, and that having examined the wife "separate and apart from her said husband, she declared that she relinquished her right of inheritance to the land contained in this deed, of her own free will and accord, without the threats or persuasion of her husband, and wishes not to be retracted." Here was no statement that the acknowledgment of the wife was made apart from her husband, nor that she acknowledged the signing and sealing, nor that the deed was shown and explained to her on privy examination; but the court held that, although the certificate did not show a literal compliance with the statute, it did exhibit the substance of every fact required to be certified and recorded. The court said it was not indispensable that the certificate should state the exact process of examination in verbal detail.

In *Gregory* v. *Ford,* 5 B. Mon. 471, where the deed of a *feme covert* was pronounced valid, although the certificate failed to show that it was explained to her on her privy examination, the court said "we are disposed to construe the statutes and the certificates liberally, with a view of

sustaining rather than of destroying titles derived from *femes covert.*"

In Missouri, where the statute is similar to that of this State, it was held, in *Chauvin* v. *Wagner*, 18 Mc. 531, that the acknowledgment by a married woman is not vitiated by the omission to state that the contents of the deed were explained to her, if it shows that she had actual knowledge of the contents, but if the certificate omits to state that she "relinquished her dower," it will be fatally defective, even though it states she executed the deed freely. *Thomas* v. *Meir*, ib. 573.

These references show that the certificate of acknowledgment must comply in substance with the requirements of the statute.

In this State the certificate and acknowledgment have been regarded as essential parts in the execution of deeds, but a substantial compliance with the statute has been considered sufficient. *Hughes* v. *Lane*, 11 Ill. 123.

The testimony does not satisfy us the petitioner did not execute this deed, and acknowledge its execution before the proper officer. To destroy the effect of a deed of such long standing, and which, soon after its execution, was placed on the records of the county, and has there remained unchallenged for near thirty-five years, the testimony must be of the clearest and strongest description—so clear, strong and convincing, as to present no loop-hole of escape from its power.

Reference is made, by appellee, to several cases decided by this court, which, it is contended, control this case, and from which it can not be distinguished.

The first case cited is *Mariner* v. *Saunders*, 5 Gilm. 113, which is to the point, that the certificate of acknowledgment of a deed from a *feme covert*, conveying *her own lands*, is as much an essential part of the *execution* of the deed as her seal or signature, and without it the law presumes the deed was obtained by fraud or coercion. This can have no particular

bearing on this case, as the lands conveyed by the deed in question were not the lands of a *feme covert.*

The case of *Hughes* v. *Lane,* 11 Ill. 123, is of the same character, and so is the case of *Mason* v. *Brock,* 12 ib. 273. *Owen* v. *Robbins,* 19 ib. 545, was a case not turning upon this point, but decided upon the fact that the appellant had no dowable interest in the land. It was said, *arguendo,* that the absence of the words, that "she was made acquainted with the contents of the deed and relinquished her dower." was not a compliance with the statute. *Garrett* v. *Moss,* 22 ib. 363, was decided on a defective acknowledgment by a wife conveying her own property. The court say, to pass the title to a married woman's land, and which can not be omitted, the certificate of acknowledgment must state that the officer acquainted her with and explained to her the contents of the deed; that he examined her separate and apart from her husband; that she acknowledged that she executed it voluntarily and freely, and without the compulsion of her husband. Each of these are essential prerequisites, and until they are performed the deed. as to a *feme covert,* is inoperative and void. *Gove* v. *Cather,* 23 ib. 634, was a proceeding to recover dower. The defense was, the claimant had relinquished her dower by deed, duly acknowledged. It was objected that the acknowledgment was defective, among other things, in this, that it did not state the wife was known to the officer to be the person who signed the deed, and the objection was sustained.

*Tully* v. *Davis,* 30 ib. 103, was an action of ejectment, and in the deraignment of title a deed from Trabue to Andrews was introduced. It was objected that the certificate did not state the grantor was known to the justice to be the person executing the deed. The deed was rejected, and on appeal to this court the ruling was approved, this court holding if it were impossible to fill this blank with any other word or set of words, and make sense, except the word "known," we should not be authorized so to fill it, for then we should do

what the law has required the certifying officer to do. But it is in fact as easy to fill the blank, so as to make the certificate and acknowledgment void, as to so fill it as to make them good. Who shall say that if the officer had filled the blank with a statement of the truth, he would not have inserted words negativing the fact that he had a personal knowledge of the identity of the grantor ?

*Russell* v. *Rumsey et al.* 35 ib. 362, was a proceeding by the same party now before us, for dower. The acknowledgment was held to be defective, because it did not appear by it that she relinquished her right of dower in the premises, though she had executed and acknowledged the deed.

*Ennor* v. *Thompson*, 46 ib. 214, was a bill in chancery to establish a homestead right, it being claimed it had not been relinquished by the execution of the deed of trust, there being no release of the homestead therein, nor any acknowledgment thereof. It was attempted to be proved by parol what the wife did acknowledge when she appeared before the justice of the peace, outside of the certificate attached to the deed, and it was held such testimony could not be heard; that the acknowledgment by the officer must speak for itself.

These are all the cases to which our attention has been called, decided by this court, on the sufficiency of an acknowledgment, and we have no disposition to dissent from any conclusion reached in either of them, though, were the question before us now for the first time, we might be disposed to put a more liberal construction upon the official acts of ignorant magistrates in such cases.

But we do not think there is any close resemblance between this case and those cited. In *Stuart et al.* v. *Dutton et al.* 39 Ill. 91, this subject being then before the court, it was said, " the great object the legislature seems to have had in view in prescribing the mode by which a married woman may be divested of her interest in land, seems to be that she should not be imposed upon or coerced by her husband; and, to protect her from imposition and coercion, the officer shall examine

her separate and apart from her husband; that he shall explain to her the nature of the act she is about to consummate, and this, by explaining to her the contents of the deed she has executed, and if it is her own estate she is conveying, that she may retract, if she desires to do so, for any cause then operating upon her. It is the design of the law she should be informed of her true position, and of the real nature of her interest in the land, and this is presumed to be done by the officer, by his certificate that he fully explained to her the contents of the deed. When all these appear from the certificate, slight departures from the words of the law will not prejudice. So long as the substance is preserved mere technical objections will not be favored."

But it is said, all these do not appear by the certificate; that it is not stated therein the contents of the deed were explained to her, but, in the eye of sense and reason, it does so appear, taking the certificate as a whole and considering all its parts. To insert the word "deed" or "instrument of writing," for the word "husband," and thereby give sense and point to that which is meaningless, would be going no farther than this court went in *Hart* v. *McCartney*, 18 ib. 129; where the word "deed" was substituted for the words "power of attorney," in an acknowledgment made with that word inserted by the court, the acknowledgment was held good.

The error in this certificate of acknowledgment is, manifestly, a clerical error, and in disposing of important rights, courts will correct them, or at least disregard them. *Stow* v. *Steel*, 45 ib. 328.

This case, we think, shows, to the satisfaction of the most inexperienced, on taking the entire certificate into consideration, that the contents of the deed were made known to her. No other sensible interpretation can be given to the certificate. It brings conviction to every mind that she knew the land was conveyed to J. S. Breese, and that is the essential part of the deed; and that this fact was communicated to her by the justice, we may fairly presume, though

that could not be very material if she had knowledge of its execution, which the certificate shows she had, and to which she relinquished her dower.

It is not at all probable, appellee, then basking in the sunshine of her prosperity, enjoying the affection and confidence of her husband, he supplying, most liberally, all her wants, ever refused to sign a deed at her husband's request, and that she has signed many hundreds of which she can have no recollection, is equally probable. In the lapse of more than thirty-four years, it would be remarkable if she could remember them.

In her first examination, appellee was content to say she thought so and so; she had no recollection, etc.; but when advised, as she must have been, that no court would give her a decree on mere suppositions and guesses, she takes courage, at a future day of examination, to testify positively she never executed this deed—the transaction then more than thirty-four years old, and she the wife of a heavy operator in real estate, buying and selling and conveying so repeatedly that it would be impossible, even for him, were he alive, to testify to the fact, in the absence of the deed itself. Unfortunately, the deed is not produced to confront the appellee. The decision of this case is vital to the owners of property in Chicago and elsewhere in this State. If appellee should succeed on her unsupported testimony, how many titles in that city will be disturbed no one can conjecture. Ruin to hundreds would follow in its train, and no where, throughout the whole length and breadth of this growing State, would titles be secure.

May it not be supposed, the petitioner is mistaken when she says she never signed this deed. She stated in her petition, her husband died on the 3d day of January, 1862. In her testimony she states he died on the 3d of January, 1861. In her testimony first taken, she states, in her re-direct examination, as follows: "I think I have seen the deed from my husband to J. S. Breese; I think I had it with

the papers in the hands of Smith, Upton and Williams, and I have seen a memorandum of it among old papers as having been sold to J. S. Breese."

When her deposition was retaken, she testified : "I am very positive I never signed the deed from John B. F. Russell to Josiah S. Breese ; I believe I have never seen it."

If she is so much mistaken in these matters, is it not probable she is mistaken in supposing she never signed this deed. That she did sign it and acknowledge it, is as well established as any like facts can be established. Should appellee succeed in this effort on such testimony as appears in this record, the security of titles will receive a shock from which it can not recover.

We make no comments on the attempt to alter the record of this deed. It is entitled to no consideration in this case, and shows only a wicked attempt, and in a very bungling manner, to commit a felony. The attempt does not affect the original deed. That speaks for itself, and the certificate of acknowledgment found upon it proclaims, in the most unmistakable terms, that there has been a substantial compliance with all the requirements of the statute. Whilst the requirements of every law must be substantially observed, this, in regard to acknowledgments of conveyances by *femes covert*, has long been considered by the profession and the general public as inconvenient and absurd, and so disgusted with it had the public become, that by an act, in force July 1, 1872, the people, acting by their representatives in the General Assembly, annulled the obnoxious and cumbersome and unnecessary requirements of former statutes, and provided a form so simple that the most ignorant can not err in applying it. This, together with kindred acts of that General Assembly, simplifying conveyances, entitles that body to the thanks of those they represented.

It is unnecessary to consider this case in any other aspect in which it has been presented, as we are well satisfied the deed in question was duly signed and acknowledged by the

petitioner, by which she relinquished the dower now claimed. Justice must not be strangled in a net of forms.

⚹The decree of the circuit court is reversed, and the bill dismissed.

*Decree reversed.*